# IN THE COURT OF APPEALS OF IOWA

No. 19-0070
Filed February 5, 2020

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**ROBERT MOHR,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Clinton County, Stuart P. Werling,

Judge.


        The defendant appeals from the denial of his motion to suppress.

**AFFIRMED.**


        John O. Moeller, Davenport, for appellant.

        Thomas J. Miller, Attorney General, and Bridget A. Chambers, Assistant

Attorney General, for appellee.


        Considered by Bower, C.J., and May and Greer, JJ.  Tabor, J., takes no

part.

**GREER, Judge.**

Following a trial on the minutes of evidence, Robert Mohr was convicted of operating while intoxicated, first offense. On appeal, Mohr challenges the denial of his motion to suppress, maintaining the officer who stopped his vehicle had neither reasonable suspicion nor probable cause to do so.

The Fourth Amendment of the United States Constitution and article I, section 8 of the Iowa Constitution protect individuals from unreasonable searches and seizures by government officials. "Subject to a few carefully drawn exceptions, warrantless searches and seizures are per se unreasonable." *State v. Lewis*, 675 N.W.2d 516, 522 (Iowa 2004). "The State has the burden to prove by a preponderance of the evidence that a recognized exception to the warrant requirement applies." *Id.*

> Exceptions to the warrant requirement now go well beyond those recognized at the time of enactment of the Fourth Amendment and include consent searches, *Schneckloth v. Bustamonte*, 412 U.S. 218, 222–23 (1973), investigatory detentions, *Terry* [*v. Ohio*,] 392 U.S. [1,] 27 [(1968)], and an increasingly broad category of administrative searches and special needs exceptions.

*State v. Ochoa*, 792 N.W.2d 260, 278 (Iowa 2010).

"A traffic stop is unquestionably a seizure under the Fourth Amendment." *State v. Tyler*, 830 N.W.2d 288, 292 (Iowa 2013). But "[a] traffic stop is permissible under our Iowa and Federal Constitutions when supported by probable cause or reasonable suspicion of a crime." *State v. McIver*, 858 N.W.2d 699, 702 (Iowa 2015). "When a peace officer observes any type of traffic offense, the violation establishes both probable cause to stop the vehicle and reasonable suspicion to investigate." *Id.* Even if the officer did not observe the driver commit a traffic

offense, the officer may stop a vehicle and briefly detain the driver for investigatory purposes when the officer has reasonable suspicion, based on "specific and articulable facts, which taken together with rational inferences from those facts, to reasonably believe criminal activity may have occurred." *State v. Tague*, 676 N.W.2d 197, 204 (Iowa 2004).

The State bears the burden of proving by a preponderance of the evidence that the requisite suspicion existed to justify the stop. *See Tyler*, 830 N.W.2d at 293. If the State fails to carry its burden, "all evidence obtained at the stop must be suppressed." *Id.* Because this controversy arises from an alleged violation of a constitutional right, we review de novo. *Tague*, 676 N.W.2d at 201.

Here, the State resisted Mohr's motion to suppress, maintaining the stopping officer witnessed Mohr's vehicle cross the center line of the four-way divided road in violation of Iowa Code section 321.297(3) (2017),[1] which gave the officer probable cause to initiate a stop of Mohr's vehicle. Mohr does not challenge the State's legal analysis—that witnessing such a violation would give the officer the requisite suspicion necessary to legally stop Mohr's vehicle. Rather, Mohr challenges the facts as presented by the State, claiming the totality of the evidence does not support the allegation that his "two left tires, approximately a quarter of

---

[1] Iowa Code section 321.297(3) provides:

> A vehicle shall not be driven upon any roadway having four or more lanes for moving traffic and providing for two-way movement of traffic, to the left of the center line of the roadway, except when authorized by official traffic-control devices designating certain lanes to the left side of the center of the roadway for use by traffic not otherwise permitted to use such lanes, or except as permitted under subsection 1, paragraph "b". This subsection shall not be construed as prohibiting the crossing of the center line in making a left turn into or from an alley, private road, or driveway.

the vehicle crossed the center line and then abruptly came back over across to the normal traveling portion of the lane."

We agree with Mohr that the video from the officer's dash cam does not definitively show Mohr's vehicle crossing the center line. With the video quality, the darkness and the distance between the officer's vehicle and Mohr's vehicle make it difficult to ascertain where on the roadway Mohr's vehicle is traveling. But video evidence is one factor to evaluate. The officer, who the district court found credible,[2] testified he witnessed Mohr's vehicle cross the center line. *See, e.g.*, *State v. Lane*, 726 N.W.2d 371, 379 (Iowa 2007) ("While we are not bound by these determinations, we give deference to the credibility determinations by the district court."). This is not a case in which the video evidence contradicts the officer's testimony. *See State v. Ripperger*, No. 14-2108, 2016 WL 146525, at *2 (Iowa Ct. App. Jan. 13, 2016) (reversing the denial of the defendant's motion to suppress where the video from the officer's dash cam did not corroborate the officer's testimony on his reason for stopping the defendant's vehicle); *State v. Wilkerson*, No. 11-1522, 2012 WL 2819369, at *1–3 (Iowa Ct. App. July 11, 2012) (reversing the denial of the defendant's motion to suppress where the stopping officer first testified he saw the vehicle "weaving within its own lane" but the video from the officer's dash cam showed the driver's driving was "smooth, nondescript, and unremarkable").

---

[2] The district court did not explicitly find the officer credible, but its ruling relies on the officer's testimony about what he observed before initiating a stop of Mohr's vehicle.

While our review is de novo, we defer to credibility findings by the district court. And here, the fact findings of the district court are squarely based on its credibility determination regarding the officer—the only witness to testify at the suppression hearing. That the video evidence neither corroborates nor contradicts the officer's testimony does not require us to overturn the facts as found by the district court.

Because credible evidence supports the determination the officer witnessed Mohr drive his vehicle over the center line of the four-lane divided road, the officer had probable cause to initiate the stop. We affirm the district court's denial of Mohr's motion to suppress.

**AFFIRMED.**